UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

| | |
|---|---|
| MARCUS D. GRAVES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| VS. | )   No. 18-1200-JDT-cgc |
| | ) |
| OFFICER MAYS, ET AL., | ) |
| | ) |
| Defendants. | ) |

ORDER DENYING PLAINTIFF'S DISCOVERY MOTIONS (ECF Nos. 35 & 36),
GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (ECF No. 31),
CERTIFYING AN APPEAL WOULD NOT BE TAKEN IN GOOD FAITH,
AND NOTIFYING PLAINTIFF OF APPELLATE FILING FEE

Marcus D. Graves, a prisoner acting *pro se*, filed an unsigned complaint pursuant to 42 U.S.C. § 1983. (ECF No. 1.) In response to the Court's order, (ECF No. 4), he filed both a signed copy of his complaint and a properly supported motion for leave to proceed *in forma pauperis*. (ECF Nos. 5 & 6.) On October 17, 2018, the Court granted pauper status and assessed the civil filing fee pursuant to the Prison Litigation Reform Act (PLRA), 28 U.S.C. §§ 1915(a)-(b). (ECF No. 7.) The complaint concerns events that occurred at the Madison County Criminal Justice Complex (CJC) in Jackson, Tennessee, where Graves was previously incarcerated. On October 10, 2019, the Court screened the complaint, partially dismissing Graves's claims and directing that process be served on the claim for excessive force against Defendant John Lee. (ECF No. 13.)

Defendant filed a motion for summary judgment on June 19, 2020. (ECF No. 31.) Graves sought additional time to respond, which was granted; the response time was extended through August 31, 2020, (ECF Nos. 33 & 34). Graves did not, however, file any response to the

Defendant's motion or seek any further time to do so.  Instead, he filed a motion for discovery and a motion to compel discovery.  (ECF Nos. 35 & 36.)  Defendant has responded to Graves's discovery motions.  (ECF Nos. 37 & 38.)

The scheduling order entered in this case set a deadline of April 20, 2020, for completing all discovery.[1]  (ECF No. 22 at PageID 71.)  Graves's motion for discovery, which he signed on August 30, 2020, (ECF No. 35 at PageID 165), is merely an additional request for certain items of discovery from the Defendant, all of which he requested previously in January 2020.  (*See* ECF No. 23.)  Defendant served responses to those discovery requests on March 25, 2020.  (*See* ECF No. 37-1 at PageID 196.)  The motion for discovery is therefore DENIED.

In his motion to compel discovery, Graves asserts he served the Defendant with his previous discovery requests on or about January 12, 2020, but Defendant did not respond in a timely manner and failed to respond adequately to Request for Production No. 8.  The scheduling order provided that a motion to compel must be filed within 45 days after a failure to respond or the service of an inadequate discovery response.  (ECF No. 22 at PageID 71.)  However, if the default or inadequate response occurred within 30 days of the discovery deadline itself, the motion to compel must be filed within 30 days after the default or service.  (*Id.*)  Thus any motion to compel concerning perceived inadequacies in Defendant's March 25 discovery responses should have been filed, at the latest, on or before April 24, 2020.  Graves did not file a motion to compel within that period, and his present motion is thus untimely.

---

[1] The Court later granted Defendant's motion to extend the dispositive motion deadline. (ECF No. 30.)  Neither Plaintiff nor Defendant, however, ever requested an extension of the discovery deadline.

The motion to compel also is not well taken on the merits. Graves contends only that Defendant did not adequately answer Request for Production No. 8, which sought all records showing the last time the Defendant was "requalified" on the procedures for using pepper spray and tasers. (ECF No. 38-1 at PageID 212.) Graves now asserts the Defendant's response to this request did not provide the "date issued, exp[i]ration, or statu[t]es."[2] (ECF No. 36 at PageID 171.) However, the Request did not ask for that specific information. Nevertheless, the documents provided in response do provide the "date issued," showing that Lee received taser certification on September 13, 2017, and pepper spray certification on November 10, 2016; he completed basic training on August 6, 2016. (ECF No. 38-1 at PageID 214-15.) That information fully answers Request No. 8.

Plaintiff also suggests in his motion to compel that summary judgment should not be granted because he has been unable to obtain responses to his discovery requests. (ECF No. 36 at PageID 171.) In certain circumstances, the Court should defer a summary judgment ruling if there has not been ample opportunity for discovery. *See* Fed. R. Civ. P. 56(d)(2) ("If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may . . . allow time to . . . take discovery."); *see also Cline v. Dart Transit Co.*, 804 F. App'x 307, 312 (6th Cir. 2020) (discussing the "*Plott* factors" as set forth in *Plott v. Gen. Motors Corp.*, 71 F.3d 1190, 1195-97 (6th Cir. 1995)).

Here, Plaintiff has submitted no affidavit or declaration setting forth specific reasons why further discovery should be allowed in this case. Moreover, the discovery deadline in this case passed more than four months before Plaintiff signed and mailed his motion to compel, yet he

---

[2] Though he does not make it clear, Graves's reference to "statutes" could be a request for any statutes that required Defendant to be certified in the use of pepper spray and tasers.

3

complained only about Defendant's response to Request for Production No. 8, otherwise contending merely that the responses were served late. Under these circumstances, the Court finds that no further discovery is warranted under Rule 56(d). *See Plott*, 71 F.3d at 1197 (noting that Plott was "dilatory" in his efforts to obtain discovery). Plaintiff's motion to compel discovery is DENIED.

Pursuant to Federal Rule of Civil Procedure 56, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[T]he burden on the moving party may be discharged by 'showing'–that is, pointing out to the district court–that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Rule 56(c)(1) provides that "[a] party asserting that a fact cannot be or is genuinely disputed" is required to support that assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers or other materials;[3] or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

"If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact as required by Rule 56(c)" the district court may:

> (1) give an opportunity to properly support or address the fact;
>
> (2) consider the fact undisputed for purposes of the motion;

---

[3] "A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." Fed. R. Civ. P. 56(c)(2). Additionally, Rule 56(c)(4) specifically provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."

>    (3)   grant summary judgment if the motion and supporting materials– including the facts considered undisputed–show that the movant is entitled to it; or
>
>    (4)   issue any other appropriate order.

Fed. R. Civ. P. 56(e).

> In *Celotex Corp.*, the Supreme Court explained that Rule 56:
>
> mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.  In such a situation, there can be "no genuine issue as to any material fact," since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  The moving party is "entitled to judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of [his] case with respect to which [he] has the burden of proof.

477 U.S. at 322-23.

In considering whether to grant summary judgment, "the evidence as well as the inferences drawn therefrom must be read in the light most favorable to the party opposing the motion." *Kochins v. Linden-Alimak, Inc.*, 799 F.2d 1128, 1133 (6th Cir. 1986); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986) (same).  However, the Court's function is not to weigh the evidence, judge credibility, or in any way determine the truth of the matter. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).  Rather, the inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251-52.

The fact that Graves has not responded does not, by itself, require granting the motion for summary judgment.  Nevertheless, if the Defendant is entitled to judgment as a matter of law on the evidence contained in the record, then summary judgment is appropriate. *Smith v. Hudson*, 600 F.2d 60, 65 (6th Cir. 1979).

The factual allegations in the complaint were summarized in the Court's order of partial dismissal:

> Graves alleges that on January 13, 2018, he was yelling for help from his cell door when Officer Lee "became upset and popped the cell door and mased [sic] me." (ECF No. 5 at PageID 15.) Graves "told him if he did it again it would be trouble," to which Officer Lee allegedly responded by again opening Graves's cell door and spraying him with mace a second time. (*Id.*) Graves "tried to block" the mace, and Officer Lee allegedly "tazed [Graves] in the neck, back, and butt after he slammed my face in the floor knocking my front tooth out." (*Id.*) . . . Graves asks "the court for justice" and seeks unspecified compensation for "pain and suffering for my teeth." (*Id.* at PageID 16.)

(ECF No. 13 at PageID 41.) In support of the summary judgment motion, Lee has submitted his Declaration, (Lee Decl., ECF No. 31-5); the Declarations of CJC Correctional Officers William Eason, Darrell Elder, and Heather Maze, (Eason Decl., ECF No. 31-3; Elder Decl., ECF No. 31-4; Maze Decl., ECF No. 31-6); the Declaration of Captain Tom Rudder, the CJC Administrator, (Rudder Decl., ECF No. 31-7); and Defendant's First Set of Requests for Admission (RFA), (ECF No. 31-8), which went unanswered by Plaintiff and are thus deemed admitted and conclusively established under Federal Rule of Civil Procedure 36.

Defendant Lee contends he is entitled to summary judgment because Plaintiff cannot establish any claim of excessive force. Because Graves was a pretrial detainee at the time of the assault, his claim must be analyzed under the Fourteenth Amendment's standard of objective reasonableness, which "turns on the 'facts and circumstances of each particular case.'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015) (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). The Court must judge the reasonableness of a particular use of force "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." *Id.*

Under an objective reasonableness inquiry, "the question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham*, 490 U.S. at 397 (citations omitted). The proper application of this standard requires consideration of the following factors:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Kingsley*, 135 S. Ct. at 2473.  This list is not exhaustive but illustrates some of the "objective circumstances potentially relevant to a determination of excessive force." *Id.*

The undisputed evidence in the record shows the following facts.  Graves was booked into the CJC on January 3, 2018, and immediately began exhibiting disruptive behavior.  The very next day, he inserted a screw into his penis and had to be transported to the hospital to remove it.  On January 10, 2018, Graves fouled his cell by smearing feces on himself, the camera, and across the cell.  Two days later, he inserted another screw into his penis and again was taken to the hospital to have it removed. (Rudder Decl. ¶¶ 4-6, ECF No. 31-7 at PageID 144-45; RFA Nos. 1-4, ECF No. 31-8 at PageID 148.)

On January 16, 2018,[4] Graves began repeatedly kicking the door of his cell, trying to create a disturbance. Lee and other correctional officers ordered Graves several times to stop kicking the cell door, but he refused to obey their orders and continued to kick the door. (Lee Decl. ¶¶ 3-4, ECF No. 31-5 at PageID 136-37; Eason Decl. ¶¶ 3-4, ECF No. 31-3 at PageID 128-29; Elder Decl. ¶¶ 3-4, ECF No. 31-4 at PageID 132-33; RFA Nos. 7-9, ECF No. 31-8 at PageID 149.) Defendant Lee and Officers Eason and Elder then entered the cell to attempt to restore discipline, telling

---

[4] Defendant asserts the incident occurred on January 16, not January 13 as alleged in the complaint.

Graves to back away from the cell door.  After warning him, Lee sprayed a burst of pepper spray toward Graves, but Graves blocked the spray with a blanket.  (Lee Decl. ¶¶ 5-6, ECF No. 31-5 at PageID 137; Eason Decl. ¶¶ 5-6, ECF No. 31-3 at PageID 129; Elder Decl. ¶¶ 5-6, ECF No. 31-4 at PageID 133; RFA Nos. 10-12, ECF No. 31-8 at PageID 149-50.)  He then charged out of his cell toward Defendant Lee, trying to grab the pepper spray from Lee's hand.  To prevent Graves from doing so, Lee used force to take him to the floor in the hallway outside the cell, but Graves remained non-compliant with the officers' instructions to submit to handcuffs and continued to resist and attempt to fight.  In an attempt to gain control, Lee stunned Graves with his taser once between the shoulder blades, for one to two seconds.  Graves then submitted to handcuffs, and the use of force ceased; no additional force was needed or used.  (Lee Decl. ¶¶ 7-11, ECF No. 31-5 at PageID 137-38; Eason Decl. ¶¶ 7-11, ECF No. 31-3 at PageID 129-30; Elder Decl. ¶¶ 7-11, ECF No. 31-4 at PageID 133-34; RFA Nos. 13-16, ECF No. 31-8 at PageID 150.)

Graves had no visible signs of injury immediately thereafter.  He later complained that his tooth, which had been chipped previously and repaired by a dentist before his arrival at the CJC, had been chipped again during the incident.  (Lee Decl. ¶¶ 11-12, ECF No. 31-5 at PageID 138; Eason Decl. ¶¶ 11-12, ECF No. 31-3 at PageID 130; Elder Decl. ¶¶ 11-12, ECF No. 31-4 at PageID 134; Maze Decl. ¶¶ 3-6, ECF No. 31-6 at PageID 141; RFA Nos. 5-6, ECF No. 31-8 at PageID 148-49.)

The first application of force alleged by Graves is Lee's use of pepper spray.  A correctional officer's use of pepper spray to restore order ordinarily does not amount to excessive force. *See, e.g.*, *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004) (use of pepper spray on inmate who "disobeyed repeated direct orders" was not excessive); *Siggers v. Renner*, 37 F. App'x 138, 140 (6th Cir. 2002) (use of pepper spray on inmate who refused to obey orders and was perceived

8

as "present[ing] a threat to prison security" was not excessive); *Combs v. Wilkinson*, 315 F.3d 548, 557 (6th Cir. 2002) (affirming summary judgment to officer who maced inmate for refusing to obey an order and stating, "the use of force to control a prison inmate is not malicious or sadistic"); *Easley v. Little*, No. 1:14-cv-891; 2016 WL 4006676, at *7 (S.D. Ohio June 28, 2016) ("Notably, a short burst of pepper spray is not disproportionate to the need to control an inmate who has failed to obey an order.").

In this case, the undisputed evidence establishes that Graves began trying to create a disturbance by kicking his cell door and refusing to obey the officers' repeated commands to stop. Defendant Lee avers that an inmate's refusal to comply with direct commands given by correctional officers threatens the security of the CJC. Such behavior can incite other inmates to also refuse to comply with officers' orders and distracts officers from performing other duties that are necessary for the safe operation of the facility, putting the safety of both Graves and the officers at risk. Lee also knew about Graves's previous disruptive behavior and his attempts to harm himself. (Lee Decl. ¶ 3-4, ECF No. 31-5 at PageID 136-37; *see also* Eason Decl. ¶ 4, ECF No. 31-3 at PageID 128-29; Elder Decl. ¶ 4, ECF No. 31-4 at PageID 132-33.) Graves has admitted that Lee sprayed him with pepper spray only once during the incident and that Graves blocked that spray with a blanket. The Court thus concludes that Lee's use of pepper spray to attempt to restore order was objectively reasonable and did not constitute excessive force.

The second application of force, Defendant Lee's taking Graves to the floor, also was not excessive. Graves does not dispute that when the pepper spray did not subdue him he charged out of his cell toward Lee and attempted to grab the pepper spray out of Lee's hand. In the face of that aggressive action, Lee acted reasonably in bringing Graves to the floor in order to protect the safety of all involved. *See Davis v. City of East Cleveland, Ohio*, 2006 WL 753129, at *10 (N.D. Ohio

Mar. 22, 2006) ("Restraining a defendant by bringing him to the ground so as to reduce any danger posed by him is a reasonable response and an action that cannot be accomplished with only a modicum of force.").[5]

The last application of force challenged by Graves is Lee's use of the taser. "Absent some compelling justification—such as the potential escape of a dangerous criminal or the threat of immediate harm—the use of [a stun gun] on a non-resistant person is unreasonable." *Bennett v. Krakowski*, 671 F.3d 553, 562 (6th Cir. 2011) (quoting *Kijowski v. City of Niles*, 372 F. App'x 595, 600 (6th Cir. 2010)). In this case, however, Graves was not unresisting. He continued to resist the officers and attempted to fight even after he was sprayed with pepper spray and taken to the floor, refusing to comply with their commands to submit to handcuffs. Lee therefore tased Graves a single time in order to get him to obey. It is not an excessive use of force to taser a detainee who, after repeated attempts to subdue him by less forceful means, still actively resists complying with officers commands. *See Labadie v. Mitchell*, No. 17-1290, 2018 WL 4488268, at *3 (6th Cir. May 11, 2018); *Rudlaff v. Gillispie*, 791 F.3d 638, 641 (6th Cir. 2015). Under these circumstances, Lee's use of the taser was not objectively unreasonable.

For all of the foregoing reasons, the Court finds Graves has failed to establish a Fourteenth Amendment claim of excessive force. Because there are no genuine issues of material fact for trial, Defendant Lee is entitled to judgment as a matter of law. The motion for summary judgment is therefore GRANTED.

It is CERTIFIED, pursuant to 28 U.S.C. § 1915(a)(3) and Federal Rule of Appellate Procedure 24(a), that any appeal in this matter by Graves would not be taken in good faith. If

---

[5] *Davis* was pre-*Kingsley* and analyzed the pretrial detainee's excessive force claim under the Eighth Amendment. However, even under *Kingsley*, using force to take an aggressive detainee such as Graves to the ground is not objectively unreasonable.

Graves nevertheless files a notice of appeal and wishes to pay the $505 appellate filing fee using the installment procedures of the Prison Litigation Reform Act, 28 U.S.C. §§ 1915(a)-(b), he also must submit a new *in forma pauperis* affidavit and a current copy of his inmate trust account statement for the last six months.

    The Clerk is directed to prepare a judgment.

IT IS SO ORDERED.

                                               s/ **James D. Todd**
                                              JAMES D. TODD
                                              UNITED STATES DISTRICT JUDGE